IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 2:20-cr-00227 |
| | : | |
| STEVEN PENNYCOOKE | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 2:20-cr-00228 |
| | : | |
| SHAWN COLLINS | : | |
| | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                       February 19, 2021

Defendants Steven Pennycooke and Shawn Collins have been charged, in separate indictments, with one count each of knowingly possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). The charges arose from a single encounter the defendants had with police officers on June 2, 2020, when the officers recovered two loaded firearms that allegedly had been in the defendants' possession. Although the government originally indicted the defendants separately, it now moves to consolidate the cases. Because the cases could properly have been charged in a single indictment, and the benefits of a joint trial outweigh any prejudice to the defendants, the government's motion is granted.

**I.     FACTUAL ALLEGATIONS**

Late at night on June 2, 2020, police officers responded to a report of two individuals

loading an ATM onto a cart on a street in Philadelphia.[1] No. 20-cr-227, ECF No. 1-1, ¶ 6; No. 20-cr-228, ECF No. 1-1, ¶ 6. When the officers arrived at the scene of this reported crime, they observed a safe in the middle of the street and two individuals, later identified as the defendants, standing together "halfway down the block," despite a curfew being in effect.[2] No. 20-cr-227, ECF No. 1-1, ¶¶ 5–6; No. 20-cr-228, ECF No. 1-1, ¶¶ 5–6. The officers then pulled their police vehicle next to the defendants to question them about the safe. No. 20-cr-227, ECF No. 1-1, ¶ 7; No. 20-cr-228, ECF No. 1-1, ¶ 7. After Pennycooke denied any knowledge about the safe, one of the officers observed him remove an object from his waistband and toss it into the backseat of a nearby car. *Id.*

The officers exited their vehicle, and eventually detained both Pennycooke and Collins. No. 20-cr-227, ECF No. 1-1, ¶¶ 7–8; No. 20-cr-228, ECF No. 1-1, ¶¶ 7–8. While Pennycooke was detained, one officer observed a gun in the backseat of the car where the object had been discarded. No. 20-cr-227, ECF No. 1-1, ¶ 7; No. 20-cr-228, ECF No. 1-1, ¶ 7. At the same time, the other officer searched Collins and removed a gun from his waistband. No. 20-cr-227, ECF No. 1-1, ¶ 8; No. 20-cr-228, ECF No. 1-1, ¶ 8. The defendants were subsequently charged with one count each of illegally possessing a firearm: Pennycooke for the gun recovered from the backseat of the nearby car, and Collins for the gun recovered from his waistband.

## II.   **DISCUSSION**

A district court may "order separate cases be tried together as though brought in a single

---

[1] The police received the report regarding the ATM around 10:53 p.m., and the officers responded "shortly thereafter." No. 20-cr-227, ECF No. 1-1, ¶ 6; No. 20-cr-228, ECF No. 1-1, ¶ 6.

[2] The curfew prohibited individuals from traveling within the city from 8:30 p.m. on June 2 until 6:00 a.m. the next morning. No. 20-cr-227, ECF No. 1-1, ¶ 5; No. 20-cr-228, ECF No. 1-1, ¶ 5; *see also* DECLARATION OF EMERGENCY RELATED IMMINENT DANGER OF CIVIL DISTURBANCE, DISORDER, OR RIOT IN PHILADELPHIA ORDER NO. 4 (June 2, 2020), https://www.phila.gov/media/20200606072513/Curfew-Order-6-2-20.pdf (mayor's order implementing curfew).

indictment or information if all offenses and all defendants could have been joined in a single indictment or information." FED. R. CRIM. P. 13. Two or more defendants could have been joined in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). "[I]t is not enough that defendants are involved in offenses of the same or similar character; there must exist a transactional nexus in that the defendants must have participated in 'the same act or transaction, or in the same series of acts or transactions,' before joinder of defendants in a multiple-defendant trial is proper." *United States v. Walker*, 657 F.3d 160, 169 (3d Cir. 2011) (quoting *United States v. Jimenez*, 513 F.2d 62, 82–83 (3d Cir. 2008)). When considering whether joinder is proper, district courts may look beyond the face of the indictments to other pretrial documents that "clarify factual connections between the counts." *See United States v. McGill*, 964 F.2d 222, 242 (3d Cir. 1992).

Here, there is sufficient evidence that the defendants were participating in the same series of acts or transactions.[3] Their charges resulted from the same law enforcement encounter: the defendants, who are siblings, were standing together, in violation of a citywide curfew, when police approached to question them in response to a report of a crime in progress, and during that encounter, the officers allege that each defendant was found to be in possession of a separate loaded firearm. *See* No. 20-cr-227, ECF No. 20, ¶¶ 5–8; No. 20-cr-228, ECF No. 21, ¶¶ 5–8. As such, the same trial witnesses would be called to offer substantially the same evidence. "Many

---

[3] A panel of the Third Circuit reached a similar conclusion in *United States v. Fields*, 347 F. App'x 782, 785 (3d Cir. 2009). In that case, the defendants had been in the same vehicle when it was pulled over for speeding. *Id.* at 784. The officers observed a gun near the feet of one of the defendants, and subsequently searched the other defendant and found drugs and a gun on him. *Id.* They were arrested and charged in a single indictment, and at trial, a government witness's testimony suggested that the defendants were selling drugs from the vehicle. *Id.* Based on these facts, the court found that the defendants had "engaged in the same series of acts or transactions." *Id.* at 785. While the facts of the *Fields* case are not identical to the facts here, the similarity between them, and the court's ultimate decision based on them, are persuasive.

3

courts will permit joinder when the charges against the various defendants involve substantially overlapping evidence that will permit joint proof at trial." 1A FED. PRAC. & PROC. CRIM. § 145 (5th ed.).[4] Therefore, the Court concludes that the joinder of the defendants' cases is proper.[5]

Although joinder may be permitted, it is not mandatory, and the Court still has discretion over whether to consolidate the cases. *See United States v. Weber*, 437 F.2d 327, 331 (3d Cir. 1970). "In exercising its discretion, the court should weigh the efficiency and convenience of a single trial against the risks of prejudice to the defendant from a single proceeding." 1A FED. PRAC. & PROC. CRIM. § 217 (5th ed.). The defendants argue that consolidation will create prejudice, as understood within the meaning of Rule 14, that outweighs the convenience of a joint trial. *See* No. 20-cr-227, ECF No. 25, at 7–9; No. 20-cr-228, ECF No. 26, at 1–2. In particular, they contend that prejudice will result from potentially "mutually antagonistic" defenses, "spillover" evidence, and association with each other. *See* No. 20-cr-227, ECF No. 25, at 7–9; No. 20-cr-228, ECF No. 26, at 1–2.

Rule 14 allows courts to sever properly joined trials if consolidation appears to prejudice a defendant. FED. R. CRIM. P. 14(a). But courts should only sever the cases "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent

---

[4] *See also United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (Sotomayor, J.) ("We have interpreted the 'same series of acts or transactions' language of Rule 8(b) to mean that 'joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme.' In this context, we also 'apply a commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinders.'" (citations omitted) (quoting *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990), then *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007))).

[5] Challenging the propriety of joining their cases under Rule 8(b), the defendants correctly point out that there is no allegation of conspiracy or *Pinkerton* liability. No. 20-cr-227, ECF No. 25, at 4–6. However, the absence of such an allegation is not fatal to the government's motion: "Rule 8(b) only requires that the offenses be part of the same act or transaction, or same series of acts or transactions; it does not require that a defendant be charged with conspiracy." *Fields*, 347 F. App'x at 785. For the reasons described above, the Court determines that the defendants engaged in the same series of acts or transactions, even without any allegations of conspiracy, and therefore their criminal cases may be joined.

the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Courts have frequently "expressed the view that 'mutually antagonistic' or 'irreconcilable' defenses may be so prejudicial in some circumstances as to mandate severance." *Id.* at 539. A defense is mutually antagonistic "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (quoting *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993)). To determine whether a mutually antagonistic defense requires severance, the district court "must ascertain whether 'the jury could reasonably construct a sequence of events that accommodates the essence of all [defendants'] defenses." *Id.* (quoting *United States v. Perez-Garcia*, 904 F.2d 1534, 1548 (11th Cir. 1990)).

Collins contends that he and Pennycooke may advance mutually antagonistic defenses that place liability exclusively on the other defendant. No. 20-cr-228, ECF No. 26, at 1. He points out that Pennycooke's defense may be that the gun in the backseat of the car actually belonged to Collins. *Id.* (citing to Pennycooke's brief). Such a defense, however, does not mandate separate trials: the jury could accept the essence of Pennycooke's defense—that the gun was not his—and that would not mean that Collins was necessarily guilty. Notably, Collins was not charged with possession of the gun found in the car. The jury could also determine that the gun did not belong to either defendant. As such, Pennycooke's potential defense does not require the cases to be tried separately. Nor does the fact that consolidation may "hinder" their defense strategies: it is well-settled that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Voigt*, 89 F.3d at 1095 (quoting *Zafiro*, 506 U.S. at 540).

In addition, the defendants posit that there is a significant risk of prejudice from "spillover" evidence presented against the other defendant. *See* No. 20-cr-228, ECF No. 25, at 8. The court's inquiry into prejudice from such evidence "hinges upon 'whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." *Walker*, 657 F.3d at 170 (quoting *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005)). Contrary to the defendants' contentions, the Court finds that there is little concern that the jury will be unable to compartmentalize the evidence as it relates to the defendants. The cases here are not particularly complex, and the charges are "relatively straightforward and discrete." *Id.* (quoting *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005)). Each defendant is charged with only one count of illegally possessing a gun, the arrests arose from a single encounter with police, and the facts relating to each defendant are readily distinguishable. Accordingly, the risk of prejudice is not great.

Relatedly, the defendants argue that they will be prejudiced from the "mere association" with the other defendant, leading the jury to convict based on an improper assumption of criminal disposition. *See* No. 20-cr-228, ECF No. 25, at 8. But jury instructions may be given that can ameliorate these concerns. *Cf. Walker*, 657 F.3d at 171 (finding the district court did not abuse its discretion in not severing a case in part because the jury was instructed that "[e]ach offense and each defendant must be considered separately" and its "decision on any one defendant or any one offense, whether guilty or not guilty, should not influence your decision on any other defendant or any other offense"). Therefore, any prejudice would be limited.

Meanwhile, the efficiencies gained from a joint trial are significant. A joint trial will save the court from having to schedule and hold a second jury trial of the same duration with the same witnesses about the same events. The benefits to the public are further magnified during the

current pandemic. These efficiencies outweigh any prejudice to the defendants, and therefore the Court will exercise its discretion to consolidate the cases pursuant to Rule 13.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the government's motion will be granted. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge
