IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-228 |
| SHAWN COLLINS | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its undersigned attorneys, Jennifer A. Williams, United States Attorney for the Eastern District of Pennsylvania, and Alexandra M. Lastowski and Derek E. Hines, Assistant United States Attorneys for the district, respectfully submits this sentencing memorandum regarding defendant Shawn Collins. The defendant is just 29 years' old but has a history of run-ins with the criminal justice system that spans over a decade. These arrests and convictions have centered around the illegal possession of firearms. In the words of the probation officer, "[i]t is noted that the defendant has a prior adult conviction for carrying a firearm without a license and carrying a firearm in a public place, numerous other arrests for firearms violations, and the instant offense involved possession of a firearm." Given the nature and circumstances of the offense, including the defendant's stated motivation for possessing the firearm, the history and characteristics of the defendant, and his documented history of failing to abide by court ordered supervision, a sentence at the top of the Guideline Range of 15 to 21 months' imprisonment is called for here.

**I.      PROCEDURAL BACKGROUND**

On August 5, 2020, the defendant Shawn Collins was charged by Indictment with one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). On August 12, 2021, the defendant entered a plea of guilty to the charge in the Indictment pursuant to a guilty

plea agreement.  A sentencing hearing is scheduled for October 26, 2021 at 3:00 p.m.

## II.     FACTUAL BACKGROUND[1]

On May 3, 2020, protests began in Philadelphia following the in-custody killing of George Floyd in Minneapolis, Minnesota.  In response to the ensuing period of unrest, including an increase in opportunistic crimes like looting, burglaries, and other violent acts, the Governor of Pennsylvania declared a disaster emergency and the Mayor of Philadelphia instituted a mandatory curfew in the city.  On June 2, 2020, the curfew was in effect and began at 8:30 p.m. and lasted until 6:00 a.m. the following day.  By law, outside of essential workers and the like, individuals were not permitted to be outside on public streets or sidewalks during the curfew.  Law enforcement officers were permitted to stop anyone suspected of being in violation of the curfew and to issue a citation if they determined that the individual was in violation of the curfew.

On June 2, 2020, at approximately 10:53 p.m., while the curfew was in effect, the Philadelphia Police Department ("PPD") received a 911 call from a citizen reporting that two black males were looting an ATM around 4100 Viola Street in Philadelphia.  PPD Officers Arcenio Perez and Edwin Perez were on duty that night and responding to an unrelated burglary when they saw the radio call come in at approximately 10:55 p.m. about the attempted looting.  The officers elected to respond to that call, and, because they were only about two blocks away, arrived at the location in less than two minutes.  The officers were familiar with the area, having recently reported to blocks nearby in response to shootings and homicides.

When the officers arrived on the scene, they observed two lone black males on the block

---

[1] The facts recited in this sentencing memorandum are the same as those contained in the Government's Change of Plea memorandum, to which the defendant stipulated at the time of the entry of his guilty plea.

and a large ATM on a cart in the middle of the street.  The males, later identified as defendants Steven Pennycooke and Shawn Collins, were walking together and away from the direction of the ATM and near a parked car.  While still in their marked patrol car, Officer Edwin Perez pulled the patrol car just short of the passenger car next to which the defendants were standing and asked both the defendants about the ATM up the street.  Defendant Pennycooke responded, "what safe?" and defendant Collins did not respond.  Rather, defendant Collins attempted to hide behind defendant Pennycooke.  Officer Edwin Perez replied to Pennycooke by indicating toward the large ATM in the middle of the block.  At the same time, Officer Edwin Perez observed defendant Pennycooke get close to the rear passenger side of the car, look down the street to where the safe was, dig inside of his waistband, bend forward, toss what he believed was a gun inside to the backseat of the car, and close the door.  Officer Edwin Perez told his partner Officer Arcenio Perez that he believed that defendant Pennycooke had thrown a gun in the car, at which point the officers got out of the police car with their guns drawn and ordered the defendants to show their hands.

Officer Arcenio Perez thereafter conducted a limited frisk of defendant Collins, which yielded a firearm.  During the course of the frisk, defendant Collins repeatedly attempted to put his hands towards his waistband instead of holding them in the air as directed.  This interaction is captured on PPD officers' body worn camera footage.  Officer Edwin Perez later confirmed that defendant Pennycooke had thrown a firearm, a 9mm Hi-Point C9 handgun loaded with nine live rounds of ammunition, which was visible in plain view, into the back of the car.  The Hi-Point handgun that defendant Pennycooke threw in the car did not belong to defendant Collins, nor did defendant Collins ever possess that firearm.  After he was in-custody, defendant Collins told police that he and his brother, defendant Pennycooke, were each carrying firearms because "they purging out here" and because defendant Pennycooke had recently been shot while at a gas station.

Defendant Collins' firearm was later confirmed to be an operable 9mm Taurus PT24/7 G2 C handgun, which was loaded with twelve live rounds of ammunition, and which was manufactured in Brazil. It was illegal for defendant Collins to possess a firearm because he had previously sustained a conviction in the Commonwealth of Pennsylvania that is punishable by more than one-year imprisonment and the defendant knew of this felony conviction.

### III. SENTENCING CALCULATION

#### A. Statutory Minimum and Maximum Penalties

For Count One (possession of a firearm by a convicted felon), pursuant to 18 U.S.C. § 922(g)(1), the defendant faces a maximum term of 10 years of imprisonment, up to 3 years of supervised release, a $250,000 fine, and a $100 special assessment. If supervised release is revoked, the Court may sentence the defendant to up to two additional years of imprisonment.

#### B. Sentencing Guidelines Calculation

The government agrees with the Probation Office's calculation of the defendant's advisory Sentencing Guideline range as 15 to 21 months' imprisonment, based on a final offense level of 21, and the defendant's criminal history category of III:

| Count One | Base Offense Level, § 2K2.1(a)(6) | 14 |
|---|---|---|
| Subtotal | | 14 |
| | Less, 2 points for timely acceptance of responsibility | -2 |
| | CH Points: 5 | CH III |
| Adjusted Total | | 12 |
| **Final Guideline Range** | **The Guideline range is 15 to 21 months' imprisonment.** | |

### IV. ANALYSIS OF STATUTORY FACTORS

The Supreme Court has declared that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). In addition, this Court must also consider all of the

sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

As described more fully below, a thorough consideration of all the above sentencing factors establishes that the Court should sentence the defendant to a period of incarceration at the top of the advisory guideline range of 15 to 21 months' imprisonment.

**A.    The Nature and Circumstances of the Offense**

Offenses involving firearms are serious. Gun violence is an epidemic in this city. *See Philly's violent year: Nearly 500 people were killed and more than 2,200 shot in* 2020, The Philadelphia Inquirer, Jan. 4, 2021, available at, https://www.inquirer.com/news/philadelphia-gun-violence-homicides-shootings-pandemic-2020-20210101.html ("The number of people killed last year – 499 as of late Thursday – is 40% higher than in 2019, and more than in all of 2013 and 2014 combined . . . . The spike in shootings was even more pronounced. More than 2,240 people were shot since Jan.1, 40% more than police have ever recorded. . . . [] City officials . . . said they believe a combination of factors unique to 2020 contributed to the spike in gun violence . . . . [including] the proliferation of guns on the street. [Police] logged more than 2,300 arrests for

illegal firearm possession last year, double the total for 2015); *In Philly, Someone Has Been Shot Every Day Since Jan. 2*, The Philadelphia Inquirer, Aug. 23, 2021, available at, https://www.inquirer.com/opinion/editorials/philadelphia-gun-violence-homicide-clearance-police-misconduct-20210823.html.  The defendant's illegal possession of a firearm enabled this cycle of violence in his already crime-ridden community.

Though the defendant was not convicted of *using* a firearm, as a convicted felon, he forfeited many of his rights, including the right to possess one.  Nevertheless, on June 2, 2020, PPD officers discovered that the defendant was carrying a 9mm Taurus PT24/7 G2 C handgun.  The firearm was loaded with 12 rounds of ammunition, including one round in the chamber – ready to be fired.  Significantly, we know why the defendant was carrying a firearm that night.  As recorded on the body worn cameras worn by the PPD officers, the defendant acknowledged that his brother, co-defendant Steven Pennycooke, had recently been shot and that the brothers were carrying firearms because "they purging out here."  PSR ¶ 15.  The defendant further explained to the Probation Officer during his presentence interview that they were carrying firearms "for protection."  *Id.* ¶ 20.  The defendant's plan to arm himself in order to take criminal justice into his own hands is troubling and weighs in favor of a sentence at the top of the guideline range of 15 to 21 months' imprisonment.

### B. The History and Characteristics of the Defendant

The defendant is a 29-year-old male who was raised by his mother in Philadelphia.  PSR ¶¶ 57-58.  The defendant holds no degrees and has only a few months of verifiable employment dating back to 2014.  *Id.* ¶¶ 77, 80.  The defendant reported a "fun" childhood without trauma or neglect, an environment of "unity and love," and friends in the neighborhood who he did not describe "as being a negative influence on him."  *Id.* ¶ 59.  Despite this positive upbringing, the

defendant's lengthy criminal history began when he was just 14 years' old and has continued virtually uninterrupted until today. One of the defendant's criminal convictions bears highlighting. According to the Presentence Report:

> On May 4, 2010, the defendant was in a verbal altercation with an adult complainant threatening to return with his friends to beat up the defendant. The defendant relayed such threats to his adult brother, Steven Pennycooke, and the two went looking for the complainant. A short time later, the defendant and his brother caught up with the complainant and a physical altercation ensued. When the complainant attempted to make a phone call, the defendant's brother shot him, striking him in the shoulder. They then forced an adult female in a car to drive them away from the scene.

PSR ¶ 37. The defendant was 17 years old at the time of his conviction for simple assault, among other charges. And yet over 11 years later, the defendant continues to resolve disputes with violence and with the aid of illegal firearms. Considering the defendant's background and history of using illegal firearms, a sentence at the top of the Guideline Range of 15 to 21 months' imprisonment is appropriate here.

### C.     The Seriousness of the Offense, Respect for the Law, and Just Punishment

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). It goes without saying that firearms-related offenses are the most serious and dangerous of the crimes punishably by federal law. As noted above, this is the defendant's third firearms-related conviction. For his last firearms-related offense, the defendant was sentenced to 9 to 23 months' imprisonment with immediate parole to house arrest, then when he violated his probation, he was sentenced to three more years of probation until his arrest on the present case. PSR ¶ 42. A sentence which includes a term of imprisonment at the top of the Guideline Range would reflect the seriousness of the defendant's misconduct and promote respect for the firearms laws that the defendant has habitually flouted.

### D. Deterrence and Consistency in Sentencing

In fashioning the appropriate sentence, the Court should account for both specific and general deterrence. As the Courts of Appeals have held before and after *Booker*, deterrence under Section 3553(a) is not limited to deterring the particular defendant. *See e.g.*, *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may consider the need for general deterrence and respect for the law"); *United States v. Glover*, 431 F.3d 744, 751 (11th Cir. 2005) (noting that pre-*Booker* and post-*Booker*, "the underlying goals of the statute and the Guidelines are retribution, general deterrence, incapacitation, and rehabilitation") (internal quotation marks and citation omitted); *United States v. Yeaman*, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation").

With respect to deterrence as to this defendant, he has shown with his numerous firearms convictions, probation violations, failure to gain legitimate employment or further his education, that without serious intervention, the defendant will resume his life of crime. Significantly, the defendant has violated the terms of his probation every single time his sentence included a term of probation following a juvenile or adult conviction. A period of incarceration at the top of the Guideline Range coupled with the maximum term of supervised release – here, three years – may deter the defendant from continuing to commit crimes.

As to more general deterrence, a sentence of imprisonment at the top of the Guideline Range will discourage other individuals, in particular, those who have committed felonies and are prohibited from possessing firearms like the defendant, from committing federal firearms crimes.

E.     **Other Considerations**

There is no need to adjust defendant's sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).  The government is not aware of any unique issues regarding education, vocational training or medical needs relating to this defendant.

V.     **CONCLUSION**

For the reasons set forth above, the government respectfully requests that the Court impose a sentence at the top of the Guideline Range of 15-21 months' imprisonment.  The government further requests a three-year period of supervised release with the conditions set forth in the Presentence Report to follow the period of incarceration.

                                                Respectfully submitted,

                                                JENNIFER A. WILLIAMS
                                                United States Attorney

                                                /s/ Alexandra M. Lastowski
                                                ALEXANDRA M. LASTOWSKI
                                                DEREK E. HINES
                                                Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing Government's Sentencing Memorandum to be served by email upon counsel for defendant:

Catherine W. Smith
catherine@dereksmithlaw.com

*Counsel for the defendant, Shawn Collins*

/s/ Alexandra M. Lastowski
ALEXANDRA M. LASTOWSKI
Assistant United States Attorney

Date:  October 19, 2021