IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------------X

UNITED STATES OF AMERICA

                                                                        **Criminal No. 20-228-JMG**

     v.

SHAWN COLLINS
-------------------------------------------------------------------X

**DEFENDANT'S POSITION ON SENTENCING**

Defendant Shawn Collins comes before the Court for sentencing after having pled guilty to one count of "Possession of a Firearm by a Convicted Felon." Mr. Collins is scheduled to be sentenced on October 26, 2021, at 9:30 AM. Undersigned counsel, on behalf of Mr. Collins, submits this sentencing memorandum to aid the Court in determining an appropriate sentence under 18 U.S.C. § 3553(a). The U.S. Probation Office ("Probation") has calculated, under the U.S. Sentencing Guidelines (the "Guidelines"), a sentencing range of 15 to 21 months in prison. The statutorily authorized maximum term of imprisonment for "Possession of a Firearm by a Convicted Felon" is ten (10) years. For reasons outlined herein the defense respectfully requests the Court impose sixteen (16) months incarceration.

    **I.   Background**

Mr. Collins was arrested on June 2, 2020. *See* Presentence Investigation Report (hereinafter "PSI") p. 1. Philadelphia Police Department Officers ("PPD Officers") responded to a theft of an ATM machine. *See* Notes of Testimony from Suppression Hearing on April 26, 2021 (hereinafter "NOT") p. 14 ¶ 18-24. Thereafter, the charges were federally adopted. *See* PSI p. 4. A grand jury sitting in the Eastern District of Pennsylvania returned a 1-count Indictment charging Mr. Collins with possession of a firearm by a convicted felon, in violation of 18 U.S.C.

§ 922(g)(1) and 924(a)(2), on August 5, 2020. *Id*. As a result of the indictment, the Philadelphia County charges were withdrawn. *Id*.

Mr. Collins' arrest occurred during a mandated city-wide curfew which was the result of unrest in the city in response to the murder of George Floyd in Minneapolis, Minnesota, by a police officer. *See* NOT p. 12 ¶ 4-11. It was approximately 10:55 PM when two PPD Officers responded to reports of two black males looting an ATM machine around 4100 Viola Street in Philadelphia. *See* NOT p. 15 ¶ 17-18 and pp 17-18 ¶¶ 15-23. When the PPD Officers arrived on the scene, they observed Mr. Collins and his brother, co-defendant Mr. Steven Pennycooke, walking together, **away** from the ATM, and near Mr. Pennycooke's parked car. *See* NOT p. 67 ¶ 18-24. The ATM machine was approximately one hundred (100) feet from Mr. Pennycooke and Mr. Collins. *See* NOT at p. 31 ¶ 11-15.

The PPD Officers, still partially in their patrol vehicle, asked the two men about the safe. *See* NOT p. 18 ¶ 1-8. As neither could see the safe, Mr. Pennycooke responded, "what safe?" *Id.* At the same time, PPD Officers testified that they observed Mr. Pennycooke move toward the rear of the passenger side of the car which he was standing next to. *See* NOT p. 18 ¶ 1-15. The PPD Officers testified that Mr. Pennycooke was then observed reaching into his waistband, removing an object, which they believed was a firearm from his waistband, and tossing that object into the nearby car. *Id.* The PPD Officers exited their vehicle with their guns drawn and ordered Collins and Pennycooke to show their hands. *See* NOT p. 7 ¶ 25. Testimony during the Motion to Suppress differs on whether the PPD Officers firearms were drawn before, during, or after they observed the firearm. *See* NOT p. 67 ¶ 18-24. *See Also*, NOT p. 119 ¶ 1-10. Regardless, Mr. Collins was placed up against a nearby wall and, from his waistband, PPD Officers recovered a Taurus PT 24/7 G2C, 9mm handgun loaded with 12 rounds. *See* NOT p. 19 ¶ 16-25. *See Also,*

NOT p. 14 ¶ 21-23. The PPD Officers indicated that Mr. Collins, while being searched, repeatedly attempted to put his hands towards his waistband. *See* NOT p. 20-21 ¶ 23-2. Mr. Collins implores this Honorable Court to watch the body camera footage submitted as evidence during the Motion to Suppress in regard to his actions once he was detained. *See* Government's Exhibit 3 from the Motion to Suppress.

Notably, Philadelphia Police, nor any charging body, ever pursued charges against Mr. Collins related to the theft of the ATM machine. *See* PSI. Additionally, despite the unrest, anti-police protests, and the calls for resistance to police, Mr. Collins was cooperative with the PPD Officers. *See* Government's Exhibit 2-5 and 7 from the Motion to Suppress. Mr. Collins' while in detention of PPD Officers was calm and polite. Mr. Collins' did not attempt to evade arrest and even informed the PPD Officers, in a remorseful manner, that he and Mr. Pennycooke were each carrying firearms because "they purging [sic] out here," and because Mr. Pennycooke had recently been shot. *Id.* Despite Mr. Pennycooke's combative nature with PPD Officers, Mr. Collins never became angry nor violent towards the arresting officers. *Id.*

## II.   Appropriate Sentence

Gun possession in the City of Philadelphia is a serious offense. Defendant does not ask this Honorable Court to ignore the gun violence and staggering homicide rates that plague the City of Philadelphia. Mr. Collins does pray that Your Honor considers how that violence has impacted Mr. Collins both at a young impressionable age and most recently when his sister was murdered.  Furthermore, a sentence of sixteen (16) months is a significant period of incarceration, in light of Mr. Collins' articulated reason for possession of the firearm, cooperation with the Philadelphia Police Officers on the night of his arrest, willingness to plead guilty, and remorse.

Mr. Collins has a somewhat significant criminal history consisting of juvenile adjudications and an adult conviction for possession of a firearm without a license in Philadelphia. Upon closer evaluation, Mr. Collins' prior offenses appear to be those of a juvenile delinquent and not a criminal. Mr. Collins first juvenile arrest occurred in 2007, when he was fourteen (14) years old. *See* PSI p. 8. This arrest, and subsequent, juvenile adjudication, was for "Simple Assault." *Id*. Mr. Collins was thereafter committed to a juvenile facility in November 2007 and again in September 2008. *Id.* Mr. Collins was discharged from his second placement and placed on aftercare probation in October of 2009. *Id.* During this time, Mr. Collins' noncompliance with juvenile probation included continued marijuana use, truancy, failure to attend classes, school behavior issues, suspensions, and failure to complete community service hours. *See Id* p. 13 at ¶ 38. He also violated probation with new arrests and adjudications for "Simple Assault", "Theft less than $50," and "Conspiracy" in October 2007; "Unauthorized Use of an Automobile" in September 2008; and "Simple Assault," "Unlawful Restraint," and "Conspiracy" in June 2010. *See* Id pp. 10-12. It was these probation violations and noncompliance issues that resulted in his three placements at a juvenile facility. *Id.*

The PSI indicates that a review of the "probation and court computer systems" indicates that much of Mr. Collins issues in placement were deemed "behavioral issues." *See* PSI p. 13 at ¶ 39. The Report further indicates that the "behavior problems were adequately addressed…" *Id*. Further, Mr. Collins began "participat[ing] in group and individual sessions and completed assigned chores." *Id.*  As a result, Mr. Collins was discharged from placement in May 2008. *Id.*

After Mr. Collins' September 2008 arrest and adjudication, he was committed to his second juvenile placement. *See* PSI pp. 11 and 13 at ¶¶ 36 and 40. Again, Mr. Collins, at this time age fifteen (15), struggled with the initial transition to placement. However, the PSI

indicates that review of the available records suggest that Mr. Collins, "ultimately made a successful adjustment, showing an ability to be respectful and stay on task, participating in counseling, attending school, completing community service hours, earning money towards his restitution obligation, and maintaining contact with his family." *See* PSI p. 13 at ¶ 40. Mr. Collins was discharged from placement and, "seemed to be complying with his…aftercare probation by attending the E-3 Center GED program, maintaining employment, and paying his restitution and courts costs in full." *See* PSI p. 13 at ¶ 41.

Mr. Collins, however, was arrested in June 2010 and recommitted. Notably, this arrest involved an adult complainant and Mr. Collins' adult brother. *See* PSI p. 12 at ¶ 37. The complainant in that incident threated to beat up Mr. Collins' after all parties had engaged in a verbal altercation. *Id.* While Mr. Collins' did go along with his brother to seek out the complainant, it was Mr. Collins' brother who brought a firearm. *Id.* Additionally, it was Mr. Collins' brother who shot the complainant. *Id.* While Mr. Collins was initially charged as an adult for this offense, Mr. Collins' was returned to the Juvenile Division on June 21, 2010. *Id* at p. 15 ¶ 49. Thereafter, in August 2010, Mr. Collins was committed to his third juvenile placement at Northwestern Academy. *Id* p. 13 ¶ 41. During placement this placement, Mr. Collins is noted to "only [have] had one negative incident." *Id.* It was due to the program's contract that Mr. Collins was discharge. *Id.* Notably, Mr. Collins did not receive any aftercare services. *Id.* Rather, he was discharged from probation on the date of his discharge from the program. *Id.*

Mr. Collins thereafter, independent of the instant offense, was only convicted on one occasion as an adult. *See* PSI p. 14 at ¶ 42. This arrest occurred in January 2015, four years after his discharge from juvenile probation. *Id.* The arrest, and subsequent conviction, were for

"Carrying a Firearm without a License in Philadelphia." *Id.* At this time, while he concedes that he did not have a license to carry, Mr. Collins was in fact not a person not to possess as defined by Pa.C.S. § 6105. Despite this, Mr. Collins accepted responsibility and plead guilty. Mr. Collins was sentenced to 9-23 months followed by four years of probation. *Id*. Mr. Collins initially violated that probation by testing positive for marijuana and benzodiazepines (Xanax). *Id* p. 14 ¶ 43. Mr. Collins was subsequently sentenced to a new three-year term of probation. *Id* p. 14 ¶ 42. Thereafter, Plaintiff was arrested for the instant offense while serving probation for his 2015 firearms offense. *Id.*

Mr. Collins' probation history speaks to the issues that Mr. Collins faced as a juvenile and as a young man. Most specifically, the PSI indicates that Mr. Collins violated his juvenile probation for using marijuana and "his initial terms of probation/parole by testing positive for marijuana and benzodiazepines (Xanax)." *See* PSI p. 13 at ¶ 38. *See Also* Id at p. 14 at ¶ 43. Mr. Collins candidly admits that he has struggled with mental health issues, which went and remain unaddressed, and for which Mr. Collins self-medicated. *Id* p. 20 at ¶ 71. Additionally, Mr. Collins reported being bullied as a kid due to "being big."  *Id* p. 18 ¶ 59. Furthermore, Mr. Collins' father was "not a consistent part of [Mr. Collins'] life." *Id* p. 19 at ¶ 64.

Furthermore, Mr. Collins' informed both the PPD Officers during his arrest, in a remorseful manner, that he and Mr. Pennycooke were each carrying firearms because "they purging [sic] out here," and because Mr. Pennycooke had recently been shot.  Mr. Collins further articulated to this Honorable Court, during allocution after pleading guilty, that given the civil unrest, the crime in the neighborhood where he resided and was visiting, and the fact that Mr. Pennycooke had recently been shot, he was fearful for his safety. Mr. Collins informed this Honorable Court that he did not intend to use the firearm. Rather, it was merely for protection in

the event that his life was in jeopardy.  Mr. Collins' "letter of remorse" attests that he, "will be a law-abiding citizen and more than that a better man, father, son, and brother." *See* Exhibit A.

     Mr. Collins has a fairly limited work history, which perhaps can be attributed to his struggles with ADHD, depression and his repeated use of marijuana and benzodiazepines. Nevertheless, he does have skills as well as tangible aspirations. He is interested in pursuing his love of music. His primary goal is to sign with a record label. He is a loving and caring father, which was confirmed not only by his mother, current paramour, but most notably the mother of his child. He plans to seek active help in maintaining his sobriety and addressing his substance abuse issues. Specifically, Mr. Collins current long-time paramour, Ms. Heather Stout, sells baked goods at fair grounds around the Berwick area under the name Grandma's Homemade Dumplings. *See* Exhibit B. Ms. Stout is willing and able to employee Mr. Collins, at least part time, after his release until he finds other gainful employment.

     Mr. Collins, maybe most importantly, desires to get home to be the man his family needs. Mr. Collins, while incarcerated, has had to endure significant hardships. First, due to the COVID-19 pandemic, visitation was not permitted at the Federal Detention Center (hereinafter "FDC") where he was initially detained. This limited the interaction that he had with his family, including his young son, now seven (7) years old. *See* Mr. Collins' letter to this Honorable Court Exhibit C.  Mr. Collins recreational activities, access to the law library, shower time, and commissary access was limited. *See* Exhibit C.  On top of the daily impact that COVID-19 had on Mr. Collins time in prison, Mr. Collins' anxiety was heightened due to the unknowns associated with COVID-19 and specifically the unknowns related to his diagnosis of high blood pressure, bad liver, and Hepatitis C. *See Id. See Also* PSI p. 20 at ¶ 71. Mr. Collins describes this period of incarceration as, "the most traumatic, physical and emotional experience that [he has]

ever endured." *See* Exhibit C. As such, Mr. Collins has turned to prayer and prays "5 times a day and every prayer includes [Your Honor]"and that Your Honor "can believe that someone people like [Mr. Collins] can change. *See* Exhibit A.

Shortly after Mr. Collins penned the attached letters, around September 22, 2021, his sister was murdered in Philadelphia when she was robbed. She leaves behind two children, who reside with Mr. Collins mother. *See* PSI p. 18 at ¶ 60-62. Despite the efforts of counsel, with the assistance of the Assistance of the US Attorneys and US Marshals, Mr. Collins was unable to attend his sister's funeral. Shortly thereafter, at the beginning of October, Mr. Collins learned that his cousin passed away. Both of these deaths have taken an emotional toll on Mr. Collins and reignited his desire to return home and be a law-abiding citizen so that he may remain in the community. As such, Mr. Collins has every intention, once released, to live with his mother. There, he intends to be a part of his son's life and help his mother raise his sister's two children.

Furthermore, Mr. Collins' "letter of remorse" further shares with this Honorable Court just how much of an impact this period of incarceration has had on his outlook post incarceration. *See* Exhibit A. Mr. Collins mentions his son, whose life he has been unable to be a part of. Mr. Collins articulates that this period of incarceration has made him realize all the opportunities and life events he has missed while incarcerated. He further states, "it makes [him] sick to his stomach," when thinking about setting a poor example for his son and "leaving [his] family to fend for themselves." Mr. Collins, in his letter of remorse, goes on to discuss his mother. His "most favorite person in the world," who "grows older everyday (sic)." Mr. Collins talks about the pain he has caused her, which he has felt in every phone call with her, and her unwavering support to help him be a better man when he comes home. Mr. Collins has spent his incarceration reflecting on his actions and has decided that he "refuse[s] to ever let [himself] slip

and put [himself] back in any similar situation like this ever again." *See* Exhibit A.

Finally, the proposed sentence is significantly longer than any sentence previously imposed on or served by Mr. Collins. Additionally, as noted in the PSR, Mr. Collins faces a sentence as a probation violator. Sixteen (16) months in prison does adequately reflect the seriousness of the offense, account for the disparity in actions between Mr. Collins and Mr. Pennycooke conduct on the night of the arrest, as well as for Mr. Collins' history and characteristics. Similarly, this lengthy sentence has allowed for a period of reflection on the part of Mr. Collins.

A sixteen (16) month sentence is a significant punishment for an individual who possessed a firearm out of fear for his own safety, especially given what Mr. Collins has had to endure this past year and a half. In imposing the recommended sentence, the Court will also avoid unwarranted disparity. The proposed sentence is appropriate in light of many factors including the comparative behavior exhibited by Mr. Collins and his co-defendant on the night of their arrest. The defense respectfully asks the Court to accept and impose the recommended sentence of sixteen (16) months. The defense also requests the Court include a recommendation that Mr. Collins receive educational and vocational training as well as mental health and substance abuse treatment.

### III.   CONCLUSION

For the foregoing reasons and any others that may appear to the Court or that may develop at the sentencing hearing, Mr. Collins respectfully requests that this Court impose a period of incarceration of 16 months, and a period of supervised release.

<div align="center">**&lt;Signature To Follow on Next Page&gt;**</div>

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | **DEREK SMITH LAW GROUP, PLLC** |
| Dated: October 18, 2021<br>Philadelphia, PA | By: /s/ Catherine W. Smith<br>Catherine W. Smith, Esq.<br>1835 Market Street, Suite 2950<br>Philadelphia, Pennsylvania 19103<br>(215) 391-4790<br>Catherine@dereksmithlaw.com<br>*Attorneys for Defendant Shawn Collins* |

# EXHIBIT A

Dear Honorable Judge John M. Gallagher

   My reason for writing this letter is to let you know that I accept full responsibility for committing the offense I am charged with and I completely accept the consequences of my actions from the night of my arrest. During the time of my incarceration up until the day of me writing this letter I am on 22 hour a day lockdown. This time has forced me to do a lot of soul searching and digging as deep as possible.  I have asked myself time and time again "is this the man you want your son to look up to? Is this who you want to continue to be? Are you ok with constantly leaving your family to fend for themselves?" It's beginning to make me sick to my stomach, honest to God!  I understand 100% that this is not me anymore. I refuse to ever let myself slip and put myself back in any similar situation like this ever again. I can honestly tell you man to man , that I am making every necessary effort possible to become a better me, a better man.  I understand and have reflected on my regretful conduct, and realize the hurt and harm I have not only caused myself but more importantly the people I love the most.  I am a father to an amazing 7 year old boy, who might I add never misses the opportunity to tell me how much he needs me and misses me, what I've missed, he acts out and screams for me constantly and it drives me crazy. My mother Stephanie Collins my most favorite person in the world, grows older everyday and even though she supports me so much,  I can always hear the hurt and pain I've caused her every phone call, not to mention I haven't seen her in over a year. In retrospect I am deeply dissatisfied with myself knowing I put myself in the situations time and time again.

You Honor,
I pray 5 times a day and every prayer includes you , I pray you can believe that some people like myself can change. I have changed for the absolute better I can attest to you that I can and will be a law abiding citizen and more than that a better man, father, son, and  brother . I pray you will believe in me as myself and my loved ones do. I am ready to come home and be who I say I am today .  I hope you can find it in your heart to grant me leniency and allow me to prove myself that I can do so much better this time around.

Thank you from the bottom of my heart heart your time and consideration.

Sincerely,
Shawn Collins

# EXHIBIT B



```
IRS                                          In reply refer to: 0441789203
     Internal Revenue Service                Jan. 25, 2013    LTR 147C  0
OGDEN  UT  84201-0038                        35-▮▮▮▮▮▮           000000 00
                                                                    00003048
                                                                 BODC: SB


HEATHER C STOUT
GRANDMAS HOMEMADE APPLE DUMPLINGS
% HEATHER C STOUT MBR
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮


        Employer Identification Number:  35-▮▮▮▮▮▮▮


Dear Taxpayer:

Thank you for your inquiry of Jan. 15, 2013.

Your Employer Identification Number (EIN) is 35-▮▮▮▮▮▮▮. Please keep
this letter in your permanent records. Enter your name and EIN on all
federal business tax returns and on related correspondence.

If you need forms, schedules, or publications, you can obtain them by
visiting the IRS web site at www.irs.gov or by calling toll free at
1-800-TAX-FORM (1-800-829-3676).

Please call our toll-free telephone number at 1-800-829-0115 with any
questions you may have.

You also can write to us at the address shown at the top of this
letter's first page.

When you write to us, please attach this letter and, in the spaces
below, give us your telephone number with the hours we can reach you
in case we need more information. You also may want to keep a copy of
this letter for your records.
                                                    Hours_____
Telephone Number (   )_____

We apologize for any inconvenience we may have caused you, and thank
you for your cooperation.
```

# EXHIBIT C

Dear Honorable Judge John M. Gallagher

   I am writing this letter to give you a detailed depiction of some of the issues I have encountered while incarcerated during a pandemic.  I was detained June 2, 2020 and brought to the Philadelphia County JAIL CFCF, then on June 9, 2020 transferred to FDC. After being arrested and incarcerated at FDC Philadelphia I could not see my family or my young son Shawn Jalil Collins Jr. I also had very limited access to my attorney.  At the time my attorney was Rocco Cipparone Jr who did not come to visit me at all, which ultimately inhibited my legal preparation. In addition I had no access to the law library, any programs, my hygiene was insufficient,  and my daily phone calls were limited.  There were various times inmates, including myself, recreation times were so inadequate that we had to choose between talking with our loved ones over the phone or a shower.  There have also been some instances when we were not able to shower for days at a time in addition,  inmates had no access to commissary, and we had to eat cold boxed lunches for months at a time. I was constantly exposed to people who had the Covid 19 virus including my cell mate who they kept me in the same cell with for weeks until he tested negative.  I have high blood pressure,  bad liver, and Hepatitis C, while also having severe mental health issues which include PTSD, depression,  and anxiety. There were many times I felt completely helpless knowing that I could contact a virus that experts know very little to nothing about, feeling like I would contact this virus and possibly lose my life in a cell for 24 hours a day with a complete stranger drove me insane at times.  After being transferred from FDC Philadelphia to Lehigh County Correctional Facility,  the FDC began granting inmates visitation with family, while Lehigh County did not in addition,  the FDC opened up for more recreation while Lehigh County did not.  I have been locked down daily. Since my incarceration, currently I am locked in my cell 22 hours out of the day.  During this time I endored the loss of my childhood friend William Myatt. My family is going through day to day hardship. My older cousin James Jones is on his death bed . Due to limited access and extensive restrictions at FDC Philadelphia and Lehigh County Jail I could not call and check on my family during these devastating and treacherous times in all of our lives.  Hearing my family struggle and suffer alone has taken a severe toll on me .


My incarceration experience during a pandemic has been by far the most traumatic, physical and emotional experience that I have ever endured. Your Honor, I humbly ask if you can please find it in your heart to grant me less time off my sentence or with the time I have already incarcerated.  Could you please consider my release, for my hardship due to this historic Covid 19 pandemic.  I would be more than appreciative and humbly thankful.  Thank you for your consideration and taking the time to read my letter.

Sincerely,
Shawn Collins SR.

**CERTIFICATE OF SERVICE**

I, Catherine Smith, hereby certify that October 18, 2021, a true and correct copy of this Sentencing Memorandum was served via ECF on the following attorneys of record for the United States:

ALEXANDRA M. LASTOWSKI
U.S. ATTORNEY'S OFFICE
615 CHESTNUT STREET
SUITE 1250
PHILADELPHIA, PA 19106
215-861-8203
Email: alexandra.lastowski@usdoj.gov

DEREK EDWARD HINES
U.S. ATTORNEY'S OFFICE
615 CHESTNUT STREET
SUITE 1250
PHILADELPHIA, PA 19106
215-861-8632
Email: derek.hines@usdoj.gov

**DEREK SMITH LAW GROUP, PLLC**

By: /s/ Catherine W. Smith, Esq.
Catherine W. Smith, Esq.
1835 Market Street, Suite 2950
Philadelphia, PA 19103
T: (215) 391-4790
Catherine@dereksmithlaw.com
*Attorneys for Defendant Shawn Collins*